MARGARET M. HEWSON, as Trustee of the Property of CORNELIUS ROBINSON, Appellant, v. STATE OF NEW YORK, Respondent. (Claim No. 45452.)

Fourth Department, May 11, 1967

*Nathan L. Levine* and *Milan Durgala* for appellant.

*Louis J. Lefkowitz, Attorney-General* (*Karl E. Nisoff* and *Ruth Kessler Toch* of counsel), for respondent.

WILLIAMS, P. J.  This is an appeal from an order of the Court of Claims which dismissed the " claim " (designated in the record on appeal as " Notice of Claim ") of the appellant, " as Trustee of the Property of Cornelius Robinson ", against the State of New York, for personal injuries sustained by him while in prison.  Claimant seeks recovery in the amount of $100,000. The claim was dismissed " without prejudice to the filing of any such claim as the said Cornelius Robinson may have at the time that his disability shall have been terminated."  The basis for the dismissal was that Margaret Hewson " as Trustee " did not have legal capacity to sue.

Robinson had been found guilty of attempted burglary and was sentenced to imprisonment for an indeterminate term of four to eight years. He began serving his sentence in a State prison in 1961, and he is still incarcerated. In 1963, while he was working in the press shop at Auburn Prison, he sustained serious injuries for which appellant now seeks to recover damages.

The question before us is whether the claimant, as such trustee, may institute the claim, or whether Robinson's cause of action is barred by section 510 of the Penal Law, which provides in part: " A sentence of imprisonment in a state prison for any term less than for life or a sentence of imprisonment in a state prison for an indeterminate term, having a minimum of one day and a maximum of natural life, forfeits all the public offices, *and suspends, during the term of the sentence, all the civil rights,* and all private trusts, authority, or powers *of*, or held by, *the person sentenced* ". (Italics ours.)

Margaret Hewson was appointed " as Trustee of the property, real and personal, of said Cornelius Robinson, pursuant to the provisions of Article 14 of the Correction Law ", on the 13th day of May, 1965, by order of the Supreme Court, Borough of Manhattan. In that order, she was " empowered to take possession of any and all personal property and real property of the said Cornelius Robinson, and to apply to this Court for its further use and application." Section 351 of article 14 states who may petition for an appointment as such trustee and includes " A relative whom he [the prisoner] is bound to support " (subd. 4) ; and " Any relative or other person, in behalf of his infant child or children " (subd. 5).

The record on appeal gives us no information about Margaret Hewson except that we are told that she is the mother of the prisoner. In fact, we have not been given the benefit of examining the petition under which she was appointed. We know not whether she applied as a relative whom Robinson is bound to support, or whether she made the petition in behalf of his infant child or children, if any. Section 353 of article 14 states in substance that the petition must set forth facts showing that the applicant is entitled to make the petition, a brief description of the property, real and personal, and the value thereof. We know not whether the claim which is here sought to be asserted was described in the petition as " property " of the prisoner. We assume that the order was properly granted for certain purposes, but the record omits completely anything that will permit us to decide what purposes were intended. Thus, we have a general order making her a trustee of his property, empowering

her to take possession of all personal and real property and to "apply to this [the appointing] Court for its further use and application." The record contains no order of the court in which she was appointed authorizing her to assert the claim which is now before us. We accept, of course, the order appointing the trustee as valid, and presume that it is based upon proper discretion but, as we have said, we do not know what was in the petition or the purposes or necessities of the appointment.

The general concept of suspension of civil rights was first codified in this State in 1799. That concept has been preserved generally, with only certain minor changes since that time. The portion of section 510 of the Penal Law which suspends civil rights has been unchanged since 1909, although there have been attempts by judicial decisions to whittle it down, almost to the extent of making the suspension meaningless. There has been no doubt as to its validity and effect or its intent and meaning, since the decision of the Court of Appeals in *Green* v. *State of New York* (278 N. Y. 15 [1938]). Indeed, the section has been preserved (with certain additions not here pertinent) in the new Civil Rights Law (§ 79 thereof, added by L. 1965, ch. 1031, eff. Sept. 1, 1967). If the force and intent of this section is to be amended, it should be by legislative action and not by judicial construction amounting to an amendment.

CPLR 208 recognizes this incapacity to sue by providing that the time limit for the commencement of such an action expires no later than 3 years after the disability ceases — not, however, beyond 10 years after the cause of action accrued. In the present case the injuries occurred on May 27, 1963, and the prisoner himself should be able to commence an action at any time after his release and prior to May 27, 1973.

Cases cited by the appellant, many in the lower courts, are either not applicable or are distinguishable. Some of these cases indicate that one appointed under article 14 may sue for the benefit of others than the prisoner under certain situations not here present. In that respect, it should be noted that in the present case Robinson undoubtedly would have a substantial personal interest as the amount claimed, as above noted, is $100,000. If actions of this type were permitted they would, in effect, emasculate the statute. For example, if it should be claimed in behalf of any prisoner that there are persons he is bound to support, and a trustee should be appointed, the trustee could sue although the prisoner might have a substantial interest in a recovery, if any; but if he or his relatives are unable or unwilling to make such claim, then the case could not be sued. This is an anomaly not contemplated by the statute.

The case of *Shapiro* v. *Equitable Life Assur. Soc. of U. S.* (182 Misc. 678, affd. 268 App. Div. 854, affd. 294 N. Y. 743) is relied upon heavily by the appellant. That case is clearly distinguishable. It was decided under section 512 of the Penal Law, which provides in part: " A conviction of a person for any crime does not work a forfeiture of any property, real or personal, or of any right or interest therein." There, Shapiro was the owner of a policy of disability insurance. He sued to recover for total and permanent disability, alleged to have occurred on January 15, 1935. After that date he was imprisoned. The decision in Special Term of the Supreme Court was based upon the fact that the cause of action was vested in Shapiro before his imprisonment and that dismissal of the action on the ground that he had no capacity to sue would amount to a forfeiture in violation of section 512 of the Penal Law.

In the present case if the right to sue in a tort action in which the prisoner is vitally and substantially interested is denied to his trustee, this would not amount to a forfeiture. Upon injury a cause of action arose, but it was subject to the limitations that existed at that time. It may be argued that this cause of action is a vested one, but such vesting, if any, was subject to the limitations which were prescribed in the statutes at the time the cause of action accrued. Therefore, if the prosecution of the action is legally denied him during his imprisonment, that does not take anything away from him because he never had the right to assert his claim.

Other cases, not tort cases, permitting suit of a prisoner's cause of action involve a receiver appointed in supplementary proceedings whose rights arose by operation of law. (*Kugel* v. *Kalik*, 176 Misc. 49, affd. 262 App. Div. 823; *Nastasi* v. *State of New York*, 186 Misc. 1051, where claimant filed his claim before he was sentenced; *Bamman* v. *Erickson*, 259 App. Div. 1040, where the action was to recover money on wagers with the defendant by plaintiff's assignor, an incarcerated felon.) In denying a motion to dismiss, the court observed: " Section 510 did not disable plaintiff's assignor from making the assignment of the cause of action for the benefit of his victims, *especially where he retained no beneficial interest in the cause of action.*" (Emphasis supplied.)

We agree with the statement " To say that a felon imprisoned has no right to sue and yet allow a claim to be prosecuted, in effect, in his name by his dependents, is to destroy any force which the statute might have." (15 Buffalo L. Rev. 397, 404 [1965].)

In a discussion in *Green* v. *State of New York* (*supra*, p. 17) it was observed that generally where prisoner negligence suits had been allowed, there were special statutes permitting the specific suits in question. If Robinson is to have a right of action, even though asserted through his " trustee ", it would seem that he should have it only if such a permissive statute would be passed in his favor.

We find it unnecessary to reach the question urged in the respondent's brief that the court lacked jurisdiction because the claim was not filed within two years after a cause of action accrued.

The order appealed from should be affirmed.

BASTOW, HENRY, DELVECCHIO and MARSH, JJ., concur.

Order unanimously affirmed, without costs.