Eileen SHUDTZ, Plaintiff,

v.

DEAN WITTER & CO., INC., Defendant.

No. 74 Civ. 5160.

United States District Court,
S. D. New York.

April 12, 1976.

Keeffe Brothers by John A. Keeffe, Stephen D. Keeffe, New York City, for plaintiff.

Jackson, Nash, Brophy, Barringer & Brooks by Lawrence P. McGauley, Ronald S. Herzog, New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

MOTLEY, District Judge.

The original complaint in this case, filed November 22, 1974, asserted a cause of action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.,* as amended by the Equal Pay Act, 77 Stat. 56. Plaintiff maintained that during her period of employment by defendant, defendant discriminated against her on the basis of sex by paying her wages at rates lower than those applied to male employees in the equivalent position.

**16**

On January 17, 1975, defendant moved pursuant to Rule 12(b)(1), Fed.R.Civ.P. to dismiss such complaint on the grounds of lack of subject matter jurisdiction. The basis of such motion was the claim that plaintiff, having voluntarily initiated and pursued administrative remedies before the New York State Division of Human Rights, was required to continue to pursue such administrative remedies to a resolution before commencing an action in federal court. Subsequent to such motion, on August 21, 1975, plaintiff filed an amended complaint, which added an additional cause of action based on the same allegations of employment discrimination, but brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, as amended by the Equal Employment Opportunity Act of 1972, 86 Stat. 103.

█ While the motion to dismiss was originally addressed to the single cause of action under the Fair Labor Standards Act and the Equal Pay Act stated in the first complaint, the court construes it as equally applicable to the additional cause of action under Title VII in the amended complaint. The controlling body of law in both causes of action is largely identical, for the courts have held that "[i]t is appropriate to apply the principles growing out of the cases arising under Title VII of the Civil Rights Act of 1964 . . . to Equal Pay Act cases, since the purpose of both Acts is to eliminate employment discrimination." *Hodgson v. Corning Glass Works,* 330 F.Supp. 46, 49–50 (W.D.N.Y.1971), *modified,* 474 F.2d 226 (2d Cir. 1973). *See also Shultz v. Wheaton Glass Co.,* 421 F.2d 259, 266 (3d Cir. 1970), *cert. denied,* 398 U.S. 905, 90 S.Ct. 1696, 26 L.Ed.2d 64 (1970).

The chronology of facts relevant to this motion is as follows: On April 23, 1974, plaintiff executed a complaint against defendant and two of its officers addressed to the New York State Division of Human Rights and based essentially on the same grounds of discrimination asserted in the instant action. On July 22, 1974, a hearing was commenced before the Executive Department of that body, which convened at 10:00 A.M. and adjourned at 3:30 P.M. At that time, plaintiff Shudtz presented her direct case, which encompassed approximately 100 pages of testimony. Defendant at that time was not presented the opportunity to cross-examine or to introduce any direct evidence in support of its defense.

The hearing was adjourned until October 17, 1974, and at the request of plaintiff's counsel was subsequently adjourned until October 24. Yet another adjournment was granted to November 27. However, on November 21, plaintiff's counsel wrote to George Sable, Chief Hearing Examiner of the New York State Division of Human Rights, requesting a discontinuance of the proceeding in that forum. In explanation of such request, counsel maintained that he had determined "that the damage suffered by complainant may be most effectively remedied, and thus the client's interest best served by our bringing action in Federal Court."

By letter of November 25, counsel for defendant Dean Witter notified the Hearing Examiner of his opposition to such request, and subsequently appeared at the scheduled hearing on November 27, but neither plaintiff nor her counsel was present. On the same date, Dean Witter was served with the summons and complaint in this action. At a subsequent state hearing scheduled on January 9, 1975, counsel for both parties were present, and the Hearing Examiner, apprised of the imminent filing of a motion to dismiss in the instant action, adjourned the proceeding pending the resolution of such motion. Plaintiff's request that the state action be terminated was denied.

It should also be noted that on August 9, 1974, defendant received a Notice of Charge of Employment Discrimination from the Equal Employment Opportunity Commission (EEOC) based on a complaint by plaintiff. However, no further action was apparently taken upon such complaint, and it is unclear from the record what the present status is of any proceedings before the EEOC, though in her amended complaint, plaintiff states that on May 23, 1975 she

was notified by the Commission of her right pursuant to Title VII to bring a civil action in United States District Court within 90 days.

■ A major contention put forward by defendant's attorneys in their memorandum of law in support of the instant motion is that plaintiff was under an obligation to exhaust her administrative remedies before bringing this suit in federal court. However, the cases which they cite for this proposition were brought pursuant to the Civil Rights Act, 42 U.S.C. § 1983. *See* Plaintiff's Memorandum of Law, pp. 1–2, *citing James v. Board of Education of Central Dist. No. 1, etc.,* 461 F.2d 566 (2d Cir. 1972), *cert. denied,* 409 U.S. 1042, 93 S.Ct. 529, 34 L.Ed.2d 491 (1972); *Goetz v. Ansell,* 477 F.2d 636 (2d Cir. 1973); *Eisen v. Eastman,* 421 F.2d 560 (2d Cir. 1969), *cert. denied,* 400 U.S. 841, 91 S.Ct. 82, 27 L.Ed.2d 75 (1970). These cases are therefore inapposite as regards the present action.

■ It is, however, clear that "[a] person claiming to be aggrieved by a violation of Title VII of the Civil Rights Act of 1964, 78 Stat. 235, may not maintain a suit for redress in federal district court until he has first unsuccessfully pursued certain avenues of potential administrative relief." *United States v. The Pullman Company,* 404 U.S. 522, 523, 92 S.Ct. 616, 617, 30 L.Ed.2d 679 (1972). Such requirements are set down with some specificity in Title VII, and require that both available state and Equal Employment Opportunity Commission remedies be sought before commencing a federal court action. 42 U.S.C. § 2000e–5. However, under the terms of the statute, complainant need not have a claim fully adjudicated in one forum before proceeding to the next prescribed forum, assuming that the action has been pending for a given length of time.

From the pleadings entered by plaintiff as to the Title VII cause of action in the amended complaint, it appears that plaintiff has literally complied with such requirements: On April 23, 1974, plaintiff filed a written, signed complaint with the New York State Division of Human Rights.

Thereafter, on July 2, 1974, more than 60 days after said complaint was sent, plaintiff filed a charge in writing and under oath with the EEOC. On May 23, 1975, more than 180 days after the filing of said charge with the EEOC, plaintiff was notified by the EEOC of her right to bring a civil action in the United States District Court within 90 days. Within such time, plaintiff amended her complaint in the instant action, asserting a Title VII claim.

■ While this chronology may on its face comply with the technical exhaustion requirements of Title VII, this court finds that the reality of the situation is quite different. During much of the time prior to the addition of the Title VII claim to the complaint, the progress of this dispute towards an administrative resolution was in fact stymied by the existence of the original complaint based solely on the Fair Labor Standards Act and Equal Pay Act. The record does not indicate what, if any, effect the existence of this suit had on the processing of the related complaint by the EEOC, but it is clear from the record that proceedings before the New York State Division of Human Rights were suspended as a direct result of the suit. Title VII provides a period of time before institution of suit specifically for the purpose of encouraging a conciliatory resolution of the dispute in an administrative setting. In the instant case, this scheme was short-circuited by the action already pending in this court. It is, therefore, the opinion of this court that the plaintiff has failed to meet the exhaustion requirements as set out in Title VII.

■ As regards the cause of action brought by plaintiff pursuant to the Fair Labor Standards Act and the Equal Pay Act, the criteria relevant to the exhaustion of remedies are less specific. The relevant statutes themselves do not contain any exhaustion provisions. While, as was noted earlier, the principles of Title VII cases are generally applied to cases brought under these statutes, it would not in the opinion of this court be appropriate to apply the entire

elaborate exhaustion scheme encompassed in Title VII to non-Title VII causes of action absent a specific legislative mandate to that effect. However, the general principle upon which this scheme is based—namely, that conciliation in an administrative format should be encouraged—certainly has applicability.

In the instant case, plaintiff of her own volition initially brought her complaint to the New York State Division of Human Rights, and pursued it through an initial hearing at which she presented 100 pages of testimony in behalf of her claim. Then, prior to any subsequent hearing at which defendant could cross-examine or present testimony in its own behalf, plaintiff attempted to terminate the state proceeding in order to pursue her complaint exclusively in this federal court action. Judge Frankel faced a similar situation in a case brought under Title VII, where a complainant had sought relief for discrimination under both Title VII and 42 U.S.C. §§ 1981, 1983. *Rios v. Enterprise Ass'n Steamfitters Loc. U. No. 638 of U. A.,* 326 F.Supp. 198 (S.D.N.Y. 1971). The question at issue there was whether or not the complainant could first seek administrative resolution from the EEOC under the exhaustion scheme set up in Title VII and then prematurely resort to the federal courts under the alternative statutes. Judge Frankel noted that "a plaintiff may have to present some reasonable justification for bypassing, the administrative forum" and concluded that "even if the complete bypassing of the EEOC may be allowable, it does not follow that a plaintiff may invoke the help of that agency and then short-circuit its efforts by premature resort to the federal court." *Id.* at 203–204.

■ Applying this line of reasoning to the instant case which is analogous though not identical, this court concludes that plaintiff's invocation of the New York State Division of Human Rights administrative procedures should not be allowed to be summarily terminated by the commencement of an action in this court under the Fair Labor Standards Act and the Equal Pay Act. To do so would be detrimental to the spirit of administrative conciliation inherent in such acts.

In addition, it seems an undue burden on the defendant that it be compelled to commence a defense in one forum and then be arbitrarily shifted to another without warning and before reaching a resolution of the issues involved in the original proceeding. The potential for unnecessary and unproductive harassment of a defendant in such a system would seem to be great.

Here, plaintiff maintains that the change in forum was sought because the administrative remedies which may be afforded plaintiff by the New York State Division of Human Rights are inadequate. Plaintiff cites particularly the limited discovery available under the state scheme and the lack of power inherent in the state commissioner to enforce whatever remedy he decrees. However, these inadequacies—such as they may be—were equally present at the time that plaintiff commenced the proceedings in the state forum. Besides, plaintiff would not be limited to the relief obtained there, since the doctrine of election of remedies is not applicable in such employment discrimination cases. *Alexander v. Gardner Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974).

■ Thus, it is the opinion of this court that plaintiff, having commenced proceedings before the New York State Division of Human Rights, was under an obligation to pursue such proceedings to a resolution before filing a complaint before this court. However, to dismiss the case on such grounds pursuant to defendant's motion would seem an unduly severe remedy given the importance of the rights at issue here. While neither party has briefed the question of whether the applicable statutes of limitations would allow the plaintiff to recommence this suit at a later date if it were to be dismissed now, there is at least some possibility that a later suit would be barred. Judge Oakes was confronted with a similar situation in a Title VII case in which a complainant had filed prematurely with the EEOC, but the EEOC had simply held off considering such complaint until

the appropriate statutory waiting period had passed. In approving such practice, he stated that "[t]o place an unnecessary stumbling block in the private litigant's path, particularly when the national enforcement agency has carried out the federal mandate of accommodation to state action, would be hypertechnical and overly legalistic, and would improperly shield a discriminatory organization from the reach of civil litigation." *Voutsis v. Union Carbide Corporation,* 452 F.2d 889, 892 (2d Cir. 1971).

Applying such reasoning to the instant case, the court has concluded that defendant's motion to dismiss shall be denied, but that the case shall be placed on the Suspense Calendar of this Court pending completion of the administrative proceedings before the New York State Division of Human Rights.

SO ORDERED.